**-POOR QUALITY**
**ORIGINALS ATTACHED**

**FILED - MQ**

In the United States District Court
For the Western District of Michigan

**TROBY D. BENSON #152327,**

_____

**Plaintiff,**

_____

_____

November 28, 2012 10:11 AM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: mlc/    Scanned by

**2:12-cv-447**

(Enter above the full names of all plaintiffs, including prisoner number, in this action.)

Gordon J. Quist, US District Judge

Timothy P. Greeley, US Magistrate Judge

**v .**

**BY RON OSBORN, DAN DURANT, MIKE McLEAN, TERRI SWIFT,**

**RICHARD B. STAPLETON, RICHARD D. RUSSELL and**

**DANIEL H. HEYNS, Defendants.**

(Enter above the full name of the defendant or defendants in this action.)

## COMPLAINT WITH JURY DEMAND

I.     **Previous Lawsuits**

**CAUTION: The Prison Litigation Reform Act has resulted in substantial changes in the ability of incarcerated individuals to initiate lawsuits in this and other federal courts without prepayment of the required $350 filing fee. Accurate and complete responses are required concerning your litigation history. Generally, a plaintiff's failure to accurately and completely answer the questions set forth below will result in denial of the privilege of proceeding *in forma pauperis* and require you to pay the entire $350 filing fee regardless whether your complaint is dismissed.**

A.     Have you ever filed a lawsuit while incarcerated or detained in any prison or jail facility?     Yes ☒ No ☐

B.     If your answer to question A was yes, for each lawsuit you have filed you must answer questions 1 through 5 below. Attach additional sheets as necessary to answer questions 1 through 5 below with regard to each lawsuit.

1.     Identify the court in which the lawsuit was filed. If it was a state court, identify the county in which the suit was filed. If the lawsuit was filed in federal court, identify the district within which the lawsuit was filed.

**Oakland County Circuit Court-Benson v. McCarthy, Case No. 06-07A367-NM**

2.     Is the action still pending?     Yes ☐ No ☒

a.     If your answer was no, state precisely how the action was resolved: **Dismissed action alleg-**

**ing claims were barred on the basis of collateral estoppel.**

3.     Did you appeal the decision? Yes ☐ No ☒

4 .    Is the appeal still pending?     Yes ☐ No ☒

a.     If not pending, what was the decision on appeal?  **N/A**

_____

5.     Was the previous lawsuit based upon the same or similar facts asserted in this lawsuit? Yes ☐ No ☒

If so, explain: _____

_____

II.    **Place of Present Confinement** **Ojibway Correctional Facility**

If the place of present confinement is not the place you were confined when occurrence that is subject of instant lawsuit arose, also list the place you were confined: **Chippewa Correctional Facility**

-1-

I.    Previous Lawsuits (Continue from page 1)

    A. Yes <u>X</u>, I have filed a second lawsuit while incarcerated in prison.

    B.    1. It was in <u>Oakland County Circuit Court - Benson-vs-McCarthy, Case No. 10-112748-NM.</u>

        2. No <u>X</u>, the action is not pending.

           a. It was resolved as: <u>Dismissed action alleging claims were barred on the basis of collateral estopped.</u>

        3. No <u>X</u>, I did not appeal.

        4. No <u>X</u>, no appeal is pending.

           a. <u>N/A</u>

        5. No <u>X</u>, the previous lawsuit was not based upon the same or similar facts asserted in this lawsuit.

### Jurisdiction

    1. The Court has jurisdiction over the plaintiff's claims of violation of federal constitutional rights under 28 U.S.C. S.S. 1331 and 1343 (a)(3).

    2. The Court has supplemental/pendant jurisdiction over the plaintiff's state constitution and state law tort claims under 28 U.S.C. S.S. 1367(a).

-1a-

III.    **Parties**

A.      Plaintiff(s)

Place your name in the first blank and your present address in the second blank. Provide the same information for any additional plaintiffs. Attach extra sheets as necessary.

Name of Plaintiff   Troby D. Benson #152327

Address Ojibway Correctional Facility, N-5705 Ojibway Road, Marenisco, MT 49947

B.      Defendant(s)

Complete the information requested below for each defendant in this action, including whether you are suing each defendant in an official and/or personal capacity. If there are more than four defendants, provide the same information for each additional defendant. Attach extra sheets as necessary.

Name of Defendant #1 Byron Osborn

Position or Title   Correctional Officer

Place of Employment  Chippewa Correctional Facility

Address  4269 West M-80, Kincheloe, MI 49784

Official and/or personal capacity?  Official and personal capacities

Name of Defendant #2  Dan Durant

Position or Title   Hearing Investigator

Place of Employment   Chippewa Correctional Facility

Address  4269 West M-80, Kincheloe, MI 49784

Official and/or personal capacity?  Official and personal capacities

Name of Defendant #3  Mike McLean

Position or Title   Step I Grievance Coordinator

Place of Employment  Chippewa Correctional Facility

Address  4269 West M-80, Kincheloe, MI 49784

Official and/or personal capacity?  Official and personal capacities

Name of Defendant #4  Terri Swift

Position or Title   Resident Unit Manager

Place of Employment  Chippewa Correctional Facility

Address  4269 West M-80, Kincheloe, MI 49784

Official and/or personal capacity?  Official and personal capacities

Name of Defendant #5  Richard B. Stapleton

Position or Title   Administrator/Hearings Administrator-Office of Policy and Hearings

Place of Employment was Michigan Department of Corrections- now Active Attorney in Michigan

Address 16346 Wacousta Road, Grand Ledge, MI 48837

Official and/or personal capacity?  Official and personal capacities

-2-

III.　Parties (Continue from page 2)

B. Defendant(s)

Name of Defendant No.6 <u>Richard D. Russell</u>

Position or Title <u>Manager, Grievance Section of Office of Legal Affairs</u>

Place of Employment <u>Michigan Department of Corrections</u>

Address <u>Grandview Plaza, P.O. Box 30003, Lansing MI. 48909</u>

Official and/or personal capacity? <u>Official and personal capacities</u>

Name of Defendant No.7 <u>Daniel H. Heyns</u>

Position or Title <u>Director</u>

Place of Employment <u>Michigan Department of Corrections</u>

Address <u>Grandview Plaza, P.O. Box 30003, Lansing, MI. 48909</u>

Official and/or personal capacity? <u>Official capacity only</u>

IV. **Statement of Claim**

State here, as briefly as possible, the **facts** of your case. Describe how each defendant is personally involved. Include also, the names of other persons involved, dates and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheets if necessary.

A.1. On November 4, 2009, the plaintiff was involved in a physical confrontation with another prisoner while housed in D-Unit on the west-side compound of the Chippewa Correctional Facility (URF-West), and was handcuffed and escorted by prison custody staff to a lockdown cell in the URF-West control center.

2. Shortly after these events, the plaintiff was served with a disciplinary charge for fighting, was put on non-bond toplock (confined to his general population cell/-area pending disciplinary hearing), and was later that day moved to another general population housing unit, Marquette Unit, on the east-side compound of the Chippewa Correctional Facility (URF-East).

3. On November 5, 2009, the plaintiff was summoned to the URF-East property room to receive his personal property (hereinafter, property) that had been packed and transported from URF-West to URF-East in his state-issued duffel bag, personal footlocker and T.V..box with his personal T.V. inside by the URF-West prison custody staff without the plaintiff being permitted to pack and accompany or carry his own property.

4. The URF-West prison custody staff failed to inventory and list (itemized) the plaintiff's property on a Michigan Department of Corrections (hereinafter, MDOC) Prisoner Personal Property Receipt (hereinafter, property receipt), and give or forward to the plaintiff his copy of a MDOC property receipt after they had itemized and packed the plaintiff's property, as required by MDOC prison policy and operating procedure.

5. The URF-West prison custody staff also failed to use property seals designed to prohibit entry to seal the plaintiff's property in his state-issued duffel bag and personal footlocker, and thereafter write the property seal numbers on a MDOC property receipt, as required by MDOC prison policy and operating procedure.

6. Because the plaintiff's property came as stated in paragraphs 3-5 above, on November 5, 2009 the URF-East property room officer, Ms. Halne, unpacked and itemized the plaintiff's property on a MDOC property receipt she titled "Ride-in", contrary to MDOC prison policy and operating procedure. (See the plaintiff's copy of the MDOC property

-3-
(Last Revised: February 2009)

IV. Statement of Claims (continued from p. 3)

receipt titled "Ride in" dated 11/5/09 attached as Exhibit A).

7. On November 5, 2009, it was found that all the plaintiff's considerable amount of food, cosmetic and hygiene items, which the plaintiff had purchased from the prisoner store and accumulated for personal use when needed, were missing from his property, that his personal T.V. was significantly damaged and a considerable amount of his legal property, which included a 42 U.S.C. S.S. 1983 civil rights complaint about the plaintiff being severely assaulted and injured by his roommate on November 26, 2006 at the St. Louis Correctional Facility of the MDOC that the plaintiff was working on and preparing for filing in federal district court, was significantly damaged and left in shambles.

8. On November 16, 2009, the plaintiff received a disciplinary hearing, was found guilty of fighting and given twenty (20) days of detention by the hearing officer, and was immediately sent to punitive segregation to serve his sanction.

9. Once situated there in punitive segregation on November 16, 2009, the plaintiff wrote and sent a correspondence addressed to the Area Resident Unit Supervisor (ARUS) of the segregation unit, telling this person that he had a November 26, 2009, ten (10) days away, S.S. 1983 civil rights complaint statute of limitations deadline to make and needed access to it and some of his other legal property in order to get it off to the court on time.

10. Also on November 16, 2009, the plaintiff wrote and filed Grievance Identifier: URF-09-11-3480-19D regarding his property that was stolen and damaged on November 4, 2009, as set out in paragraphs 1-7 hereinabove.

11. On November 17, 2009, the plaintiff was reviewed on, and thereafter served with his copy of, a MDOC Notice Of Intent To Conduct An Administrative Hearing (hereinafter, Notice of Intent) issued by defendant Osborn on 11/16/09, which stated that "Prisoner (the plaintiff) was in possession of excess legal work

-3a-

that would not fit into his duffel or footlocker," that "Prisoner (the plaintiff) needs a hearing to determine allowable legal work," and that "All legal work in his (the plaintiff's) possession must be current litigation and must fit into his duffel and/or locker." (See plaintiff's copy of the MDOC Notice Of Intent To Conduct An Administrative Hearing dated 11/16/09 attached as Exhibit B).

12.  On November 16, 2009, after the plaintiff was sent to punitive segregation from his disciplinary hearing on the fighting charge, defendant Osborn packed up and itemized the property that the plaintiff had left from the theft of his property on November 4, 2009, other than his state-issued clothing property, on a MDOC Property Receipt and stated on the property receipt that "1 box full of excess legal work that would not fit in allowable limit" was seized by him from the plaintiff's property as "Excess Property/Other Contraband." (See the plaintiff's copy of the MDOC Property Receipt dated 11/16/09 attached as Exhibit C).

13.  The plaintiff did not receive his copy of the MDOC Property Receipt dated 11/16/09, Exhibit C, contrary to MDOC prison policy and operating procedure, until December 6, 2009, the day when he was released from punitive segregation and found it attached to the hand-strap of his state-issued duffel bag.

14.  Also on November 16, 2009 at 08:30 in the morning, defendant Osborn issued a MDOC Contraband Removal Record which stated that "1 box of excess legal papers" was seized by him from the plaintiff's property as his "Description and Reason for Confiscation." (See the plaintiff's copy of the MDOC Contraband Removal Record dated 11/16/09 at 08:30 attached as Exhibit D).

15.  The plaintiff did not receive his copy of the MDOC Contraband Removal Record dated 11/16/09 at 08:30, Exhibit D, contrary to MDOC prison policy and operating procedure, until December 6, 2009, the day when he was released from punitive segregation and found it attached to one of the handles to his foot-

-3b-

locker.

16. Pursuant to MDOC prison policy and operating procedure, prisoners have the right to possess and store legal property (legal papers/materials and law books) in their cells.

17. Pursuant to MDOC prison policy and operating procedure, the State of Michigan, through the MDOC, uses the blanket standard of the "one footlocker rule," which limits prisoner property to that which can be "placed in one state-issued duffel bag and one footlocker, if purchased by the prisoner," to determine the existence of a security or fire safety hazard, whereby any property limitation imposed on prisoners shall not apply to legal paper/material and law books (legal property) except that if the quantity thereof conflicts with important institutional goals such as security or fire safety, in which case a limitation may be sought through the administrative hearing process, where the standard for imposition of a limitation shall be whether the material in question is "reasonably necessary to (assist the prisoner with respect to his) pending litigation," treating as "pending" litigation any lawsuit that a prisoner has filed or is preparing to file.

18. The MDOC has determined in MDOC prison policy and operating procedure that legal property conforming to the "one footlocker rule" pose no threat to security or fire safety and due to the importance of a prisoner's legal property to his/her right of access to the courts, it is required by MDOC policy (Policy Directive (PD) 04.07.112) that a hearing must be conducted by a hearing officer from the Hearings and Appeals Division of the Office of Policy and Hearings, now called the State Office of Administrative Hearings and Rules (SOAHR), pursuant to Administrative Rule 791.3315 to determine if the items are legal property and thus allowed to be possessed before requiring a prisoner to dispose of any property of a "legal" nature that is in excess of allowable property limits.

-3c-

19. Pursuant to MDOC prison policy and operating procedure, if a prisoner is in possession of excess property and it is claimed to be legal property, an "excess legal property hearing" may be initiated by staff and the legal property which has been seized from a prisoner prior to the hearing should be described as much as possible in the Notice of Intent.

20. Pursuant to MDOC prison policy and operating procedure, a Notice of Intent is to be prepared on any excess personal property, following the MDOC's procedures for seizure of such property, and a separate Notice of Intent is to also immediately be written to advise the prisoner that a formal hearing will be conducted to determine whether the property s/he claims to be legal materials are allowable under MDOC Policy Directive (PD) 04.07.112.

21. Pursuant to MDOC prison policy and operating procedure, after the Notice of Intent is reviewed with the prisoner, it is, or should be, forwarded to the hearings coordinator or hearing investigator who is to, or should, immediately contact the Hearings and Appeals Division of the Office of Policy and Hearings to schedule a hearing.

22. Pursuant to MDOC prison policy and operating procedure, as furthered established in the law on MDOC "Excess Legal Property Hearings," the MDOC shall (must) commence and complete the required administrative hearing within thirty (30) days from the date it seizes a prisoner's legal property (legal papers and law books). Moreover, in order to ensure the prisoner is not unreasonably deprived of legal materials which may be needed to meet filing deadlines and other time constraints, the prisoner shall have two (2) days from the date of seizure to present the MDOC with a list of legal materials needed to complete legal work prior to the running of the thirty-day period and, with respect to these materials only, the MDOC shall convene and complete the required administrative hearing within seven (7) days of the date that the list is received from the prisoner

-3d-

by the hearing investigator.

23. On November 18, 2009, defendant Durant came to see the plaintiff in punitive segregation early in the morning and introduced himself as the hearing investigator assigned to the plaintiff's excess legal property hearing.

24. The plaintiff immediately told defendant Durant that he was working on a S.S. 1983 civil rights complaint when he was called to go to his disciplinary hearing two days ago on November 16, 2009, that it was just about finished and ready to go into court with other required paperwork and documents and that as soon as he could get it, complete it, put everything in order and get everything copied, he could send it off in the mail to be filed in court and that he only had until November 26, 2009, just eight days away from the date of his statute of limitations deadline, to do all of this, that November 26, 2009 is his deadline date.

25. Defendant Durant responded and told the plaintiff that he wanted him to go through his legalwork that was confiscated and take out everything that is not legal, like personal letters, typing and writing paper and anything else that has nothing to do with his pending litigation, and would have an officer come and get him in just a few to get him to do this.

26. The plaintiff then told defendant Durant that he does not understand how or why his legal property did not fit into his property within the allowable limit because when he received his property that had traveled from URF-West to the URF-East property room on November 5, 2009, eleven (11) days away from when defendant Osborn seized his legal property on November 16, 2009, all of his property fit in his state-issued duffel bag and personal footlocker at that time and was transported as such, that the URF-East property room officer, Ms. Helne can attest to that, as well as the property receipt that Ms. Helne did on his property on November 5, 2009 will show, and that the only way his legal property

probably would not fit in allowable limit is that if he had had that large amount of his property that was missing/stolen from his property on November 4, 2009.

27. Defendant Durant responded and told the plaintiff that all of the legal work which was confiscated by defendant Osborn is that property which would not fit in his duffel bag when you include the space for his personal T.V. to fit inside the duffel bag also.

28. The plaintiff then stated that he would like to get a statement from the URF-East property room officer, Ms. Helne on that and needed a copy of the property receipt Ms. Helne completed on November 5, 2009 also to present at his excess legal property hearing.

29. The plaintiff thereafter asked defendant Durant if he needed a list, the list which the plaintiff had wrote and had in his hand, of the legalwork materials that the plaintiff needs to make his deadline on November 26, 2009 and stressed that he needed this stuff as soon as possible because November 26, 2009 is only eight days away.

30. Defendant Durant responded and told the plaintiff no because he would be the one conducting the hearing since the plaintiff's deadline is so close, and that the hearing will probably be conducted today after the plaintiff sorts through his legal property and separates what is legal from non-legal.

31. After defendant Durant left, a corrections officer soon came and took the plaintiff to a holding cell in the segregation unit where the plaintiff found his legal property that was taken by defendant Osborn tightly packed full in a T.V. box the size for a color KTV or RCA T.V. to go in.

32. The plaintiff went through his legal property as requested by defendant Durant and was unable to find his S.S. 1983 civil rights complaint, application to proceed in forma pauperis and affidavit of indigence that he was preparing to file in federal district court in his legal property that had been seized

-3f-

by defendant Osborn.

33. The plaintiff looked at the large amount of his legal property that had been seized by defendant Osborn and concluded that there was no legitimate possible way that all of this legal property would not fit in his property within the allowable limit, and that defendant Osborn had lied when he said that all of the plaintiff's seized legal property did not fit in the allowable limit of his property.

34. No hearing was held on November 18, 2009, as defendant Durant had told the plaintiff that such probably would occur today and be conducted by him.

35. The next day on November 19, 2009, defendant Durant came back and served the plaintiff with a "24 Hour Notice" that stated on November 19, 2009, the plaintiff "was given notice of the hearing to be conducted for his: Excessive Legal Property Hearing." (See plaintiff's copy of the 24 Hour Notice by H.I. (defendant) Durant dated Thursday November 9, 2009 attached as Exhibit E).

36. The plaintiff told defendant Durant that his S.S. 1983 civil rights complaint, application to proceed in forma pauperis and affidavit of indigence he had and was preparing to file in federal district court was not in his legal property that was seized by defendant Osborn, and he had the plaintiff sort through yesterday, that it had to be in his other property that was packed up by defendant Osborn, and that he needed access to his other property packed up by defendant Osborn now so he could get this legalwork from there and try to make his S.S. 1983 civil rights complaint statute of limitations deadline of November 26, 2009, which is only seven (7) days away now.

37. Defendant Durant responded and told the plaintiff that he was assigned to the plaintiff's excess legal property hearing and for the plaintiff to get access to his other property besides that which was seized as excess legal property, then he would have to get with the segregation unit personnel for them

-3g-

to do that.

38. The plaintiff told defendant Durant that his S.S. 1983 civil rights complaint paperwork was out and in with that legal property defendant Osborn seized on November 16, 2009 and he does not see how it could be separated from the seized legal property unless that was done on purpose, and pointed out to defendant Durant that him now telling the plaintiff that he had to get with the segregation personnel to see if his missing S.S. 1983 civil rights complaint paperwork is with that property that was not seized in order to make his deadline is suspicious.

39. The plaintiff then gave defendant Durant the paper that the plaintiff had tried to give him yesterday on November 18, 2009, listing the materials that the plaintiff needed to make his November 26, 2009 S.S. 1983 civil rights complaint filing deadline.

40. The plaintiff also gave defendant Durant another piece of paper that the plaintiff wrote on November 18,2009, requesting assistance to collect a statement from the URF-East property room officer, Ms. Helne, about how the plaintiff's property, including his legal property, had arrived to her on November 5, 2009 and whether it all fit in the plaintiff's state-issued duffel bag and personal footlocker or not; assistance to collect a copy of the property receipt completed by URF-East property room officer, Ms. Helne, on November 5, 2009 that showed what little property the plaintiff had did fit in his state-issued duffel bag and personal footlocker with his legal property; and the opportunity to have all of the plaintiff's property, legal and other property included, brought into the excess legal property hearing and allow the plaintiff to pack all of such in his personal footlocker and state-issued duffel bag to show that all of the plaintiff's property did and would fit in allowable limit, and if such by chance did not fit, it certainly would not have been nearly as much as the large amount

-3h-

of the plaintiff's legal property that defendant Durant had seized on November 16, 2009, claiming that all of such was excess legal property when it was not, while talking and telling defendant Durant this also.

41. The plaintiff thereafter asked defendant Durant that since he did not hold the hearing that he said he would be conducting yesterday on November 18, 2009, when is the hearing on the plaintiff's excess legal property scheduled to be held now.

42. Defendant Durant responded and told the plaintiff that the hearing probably would not be held until Tuesday of next week and left.

43. On Tuesday 24, 2009, two days away from the November 26, 2009 statute of limitation deadline for the S.S. 1983 civil rights complaint that the plaintiff was working on and preparing to file in federal court before the seizure of his legal property by defendant Osborn, no hearing on the plaintiff's seized excess legal property was held.

44. Pursuant to MDOC prison policy and operating procedure, a hearing investigator must be assigned to every excess legal property hearing and defendant Durant's duties as the hearing investigator are to:

   a. Contact the Hearings and Appeals Division of the Office of Policy and Hearings immediately upon the receipt of the Notice of Intent which has been reviewed with the prisoner (the plaintiff) to schedule a hearing, which hearing will be commenced within seven days of the date the property was removed from the prisoner's (the plaintiff's) possession in order to ensure that a prisoner (the plaintiff) is not unreasonably deprived access to his/her legal papers;
   b. Interview the prisoner (the plaintiff) immediately, (e.g., within no more than two (2) days of the date the property was seized), obtain a list of the prisoner's (the plaintiff's) pending cases for which the materials that are the subject of the hearing are claimed to be necessary, ask the prisoner (the

-3i-

plaintiff) if any of the seized material is needed to meet filing deadlines and, if so, instruct the prisoner (the plaintiff) to identify the specific materials needed by list which will be presented to the hearing officer; and

c. Ask the prisoner (the plaintiff) whether s/he requests assistance to witness statements or documents to have presented to the hearing officer and if defendant Durant (the hearing investigator) has questions regarding what is required of her/his role in an excess legal property hearing, contact the Hearings and Appeal Division of the Office of Policy And Hearings for guidance.

45. Pursuant to MDOC prison policy and operating procedure, a hearing officer's duties in the hearing process are, briefly, as follows:

a. Explain the hearing procedure to the prisoner, and may allow the prisoner the opportunity to sort through the property under the supervision of appropriate staff after the hearing procedure has been explained, upon the encouragement of the hearing officer to separate out that property which is not reasonably necessary to pending litigation and dispose of it appropriately e.g., by sending it home.

b. If the prisoner has listed specific legal materials that are needed to meet deadlines which could not reasonably be met if the property was held pending completion of the hearing within 30 days of the date the property was seized, the hearing officer must review the identified material and determine if it is allowable excess legal property within 7 days of the hearing investigator's receipt of the prisoner's list and, if so, immediately return it to the prisoner. The remaining materials will be reviewed when the hearing is completed.

c. At the conclusion of the hearing, return that property which has not already been returned as necessary to meet filing deadlines and which the hearing officer determines to be allowable excess legal property.

-3j-

d. Prepare a hearing report using the Formal Administrative Hearing Report form (CSJ-153) and note on the hearing report in a manner sufficient to describe each item, what property is to be returned to the prisoner. The hearing officer should describe the property so that someone who was not at the hearing could understand what occurred. Those property items determined not to be allowable and thus not returned to the prisoner must be specifically described by the hearing officer on the hearing report along with the reason why they are not returned to the prisoner. The property determined to be not allowable will be disposed of in a manner consistent with PD 04.07.112. A copy of the hearing report must be sent to the Hearings Administrator at Central Office.

46. On information and belief, when a prisoner's legal property is summarily seized by staff as excess legal property and the MDOC excess legal property formal administrative hearing procedure is initiated by the Notice of Intent following therefrom, the Hearings and Appeals Division of the Office of Policy and Hearings at the MDOC Central Office, after being contacted by the hearings coordinator or hearing investigator, calls the matter to the attention of defendant Stapleton, the Administrator and/or Hearings Administrator of the MDOC Office of Policy and Hearings, now called the State Office of Administrative Hearings and Rules (SOAHR), if defendant Stapleton was not already aware of the matter through the Notice of Intent being forwarded to him directly, as the individual responsible for the matter that the MDOC prison policy and operating procedure on excess legal property formal administrative hearing entails and concerns.

47. On information and belief, defendant Stapleton was the MDOC policy maker on administrative hearings at the time the plaintiff's legal property was summarily seized by defendant Osborn as excess legal property and the MDOC excess

-3k-

legal property formal administrative hearing procedure was implemented, and was ultimately responsible, through audit of MDOC prison policy and operating procedure governing administrative hearings, to see that the plaintiff's excess legal property hearings were timely held and conducted pursuant to MDOC prison policy and operating procedure.

48. On November 25, 2009, the plaintiff filed Grievance Identifier: URF-09-11-3562-27A pursuant to MDOC prison policy and operating procedure, claiming that although he was placed in segregation for fighting, that should not have stopped him from being able to file his 42 U.S.C. Section 1983 action in federal court, when he informed the ARUS of the segregation unit in writing and defendant Durant on 11/18/09 of his November 26, 2009 statute of limitation deadline for the 42 U.S.C. Section 1983 civil rights complaint that he was working on and preparing to file in court before being put in punitive segregation. (See the plaintiff's grievance, Grievance Identifier: URF-09-11-3562-27A, dated 11/25/09 attached as Exhibit F).

49. The plaintiff filed Grievance Identifier: URF-09-11-3562-27A because the needed legal materials he listed were not returned to him due to no hearing officer holding a hearing within the 7 days of defendant Durant's receipt of the plaintiff's list on November 18, 2009, as required by the MDOC excess legal property formal administrative hearing procedure, to review the identified listed legal materials and determine if it is allowable excess legal property needed to meet the plaintiff's November 26, 2009 42 U.S.C. Section 1983 civil rights complaint statute of limitation deadline, which could not reasonably be met if all of the plaintiff's legal property was held pending completion of the excess legal property hearing within 30 days of the date that the plaintiff's legal property was seized as excess legal property by defendant Osborn on November 16, 2009, and that the required time limit for that hearing expired on November

-31-

25, 2009, as well as the plaintiff's ability to make the November 26, 2009 deadline. (See Exhibit F).

50.  On November 30, 2009, defendant McLean, as Grievance Coordinator, rejected the plaintiff's Grievance Identifier: URF-09-11-3562-27A as non-grievable per policy, quoting PD 03.02.130 which states in relevant pertinent part that "Grievances that raise the following non-grievable issues also shall be rejected: Decisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules, including property disposition, and issues directly related to the hearing process (e.g., sufficiency of witness state- ments; timeliness of misconduct review; timeliness of hearing)," that the plaintiff's "avenue of recourse is through the rehearing process..., not the grievance process," and that "Formal excess legal property hearings are also done by SOAHR hearing officers (per OP 04.07.112); The issues raised in this grievance are directly related to the hearings process and are non-grievable." (See Exhibit F).

51.  PD 03.02.130 also states that "Grievances may be submitted regarding alleged violations of policy and procedure... which directly affect the grievant (the plaintiff), including alleged violations of this policy and related procedures."

52.  In his appeal of the rejection of Grievance Identifier: URF-09-11-3562- 27A, the plaintiff pointed out that "as stated in grievance, no hearing or decision has been held or made by a hearing officer on the plaintiff's confiscated legal property, and to this date such has not occurred despite the plaintiff's inquiries to defendant Durant which are not responded to or answered by anyone in the URF SOAHR office, making the rehearing process also unavailable to the plaintiff," and "what the plaintiff is being showed and told is that he has no administrative recourse and that his legal property can and will be denied him

indefinitely." (See Exhibit F at Step II appeal of defendant McLean's rejection of grievance).

53. On April 19, 2010, defendant Russell, while acting pursuant to MDOC prison policy and operating procedure on behalf of the MDOC Director, defendant Heyns, who became Director behind previous MDOC Director Patricia L. Caruso and there by kept defendant Russell in his previous position to continue to act on his behalf as Director and final policymaker of the MDOC on prisoner grievances and the prisoner grievances' related matters, approved defendant McLean's initial rejection of the plaintiff's Grievance Identifier: URF-09-11-3562-27A stating, "The responses the plaintiff received at Step I and II reflect that your issues were in fact considered and appropriately investigated at the facility level" and "As there is no additional information or basis found for relief at Step III, the Step II decision (and respectively, defendant McLean's Step I decision and the basis for it) is upheld." (See Exhibit F).

54. On information and belief, when a prisoner files a grievance, the grievance staff calls the matter to the attention of these individuals responsible for the matter that the grievance concerns.

55. On December 6, 2009, the plaintiff was released from punitive segregation back to general prison population on the URF-East compound, being twenty (20) days later and after the plaintiff was put in punitive segregation for fighting and defendant Osborn thereafter seized the T.V. box full of his legal property as excess legal property on November 16, 2009, and received back all of his other property that was packed up by defendant Osborn according to Exhibit C, the property receipt completed by defendant Osborn on November 16, 2009.

56. After unpacking his property back at the housing unit the plaintiff was sent to from punitive segregation, the plaintiff did not find his 42 U.S.C. Section 1983 civil rights complaint, application to proceed in forma pauperis

-3n-

and affidavit of indigence that he had before going to punitive segregation, was working on and preparing to file in federal court with this property either, along with finding a lot of his other property missing also at this time.

57. On December 15, 2009, twenty-nine (29) days later and after the plaintiff was put in punitive segregation and defendant Osborn seized the T.V. box full of his legal property as excess legal property on November 16, 2009, ARUS T. Hagelee of URF-West D-Unit wrote a Step I response to the plaintiff's Grievance Identifier: URF-09-11-3480-19D, which the plaintiff received on or about December 17, 2009, and stated, pertinent to the issue of the plaintiff's legal property, that "The officer who packed the plaintiff's property (on November 4, 2009) indicated to me that the plaintiff did have an excess of legal paper-work but that it was all able to fit in the (plaintiff's) property in accordance with PD 04.07.112." (See plaintiff's Step I grievance and Step I response to grievance, Grievance Identifier: URF-09-11-3480-19D dated 11/16/09 and 12/15/09 respectively, attached as Exhibit G).

58. On December 15, 2009, approximately two days before he received the Step I response to his Grievance Identifier: URF-09-11-3480-19D, Exhibit G, the plaintiff filed Grievance Identifier: URF-09-12-3786-19D about how defendant Osborn did his property other than that which he had seized as excess legal property when he packed up the plaintiff's property by property receipt, Exhibit C, on November 16, 2009, which the plaintiff was not able to find out about until December 16, 2009, when the plaintiff was released from punitive segregation and given back his property.

59. In Grievance Identifier: URF-09-12-3786-19D, the plaintiff did not directly complain or say anything about not finding his U.S.C. Section 1983 civil rights complaint, application to proceed in forma pauperis and affidavit of indigence in his property on December 6, 2009 either, after such was not found

by him in his seized by defendant Osborn legal property that defendant Durant had him sort through on November 18, 2009, but complained only about his other missing property items because he feared that if he had mentioned at that time that such said legal property was missing, defendant, as Grievance Coordinator, McLean would have rejected the grievance like he did Grievance Identifier: URF-09-11-3562-27A, Exhibit F, to prevent the plaintiff from being heard.

60. Instead, on December 21, 2009 when interviewed on Grievance Identifier: URF-09-12-3786-19D by defendant Swift as the Step I respondent, the plaintiff used MDOC prison policy and operating procedure which states that when interviewed on a grievance "The grievant shall have the opportunity to explain the grievance more completely at the interview to enable the Step I respondent to identify and gather any additional information needed to respond to the grievance," and showed defendant Swift his Step I response to Grievance Identifier: URF-09-11-3480-27A from ARUS T. Hagelee, Exhibit G, which stated that although the plaintiff did have an excess of legal paperwork, all of it was able to fit in the plaintiff's property in accordance within PD 04.07.112 on November 4, 2009, told defendant Swift that all of his property transferred from URF-West to URF-East as such, that defendant Osborn lied when he said that the plaintiff had excess legal property that did not fit in accordance with PD 04.07. 112 and summarily seized his legal property on November 16, 2009, that he did so and implemented the MDOC excess legal property formal administrative hearing procedure to confiscate and destroy the plaintiff's 42 U.S.C. Section 1983 civil rights complaint and related paperwork which he saw that the plaintiff was preparing to file in court against the MDOC and now is no longer in the plaintiff's property anywhere, that it has been thirty-five (35) days since defendant Osborn summarily seized his legal property on November 16, 2009, and that they are not holding the required hearings on his excess legal property because they do not

want the plaintiff to develop the facts and put on record his case against defendant Osborn in order to prevent the plaintiff from having a 42 U.S.C. Section 1983 action against defendant Osborn and other prison officials.

61. The plaintiff furthered explained to defendant Swift that this now missing 42 U.S.C. Section 1983 civil rights complaint was about a serious assault he suffered on November 26, 2006 at the MDOC St. Louis Correctional Facility, when his then roommate attacked him while he was sleep and beat him unmercifully about the head, face, and body with a lock, knocking the plaintiff out, stopping the assault and starting back when the plaintiff came to and tried to get up to seek help, where this continued for about an hour, while other inmates, at least two of them, came to the room where all this happened and talked to the plaintiff's roommate through a slot they opened in the door, which is against prison rules, trying to get him to stop before he killed the plaintiff, and while all this happened without any corrections officer doing his security rounds to check on inmates locked in their rooms at this time, or them investigating why the plaintiff's room slot was open with outside inmates at the open slot when before this time when the plaintiff was passed a small bag of store items at his door, a correction officer saw this from his view in control booth, came and confiscated the bag of store items, and had the corrections officers at least bother to see why the plaintiff's room slot door was open at this time with outside inmates there, the severity of the assault could have been at least minimized to where the plaintiff's injuries would not have been as severe and his blood would not have covered every inch of everything in the room.

62. The plaintiff was taken to two different hospitals before the third hospital would keep him for about ten days before releasing the plaintiff to go back to prison before he properly healed, the MDOC never notified the plaintiff's emergency contact person of the plaintiff's assault and condition

-3q-

when he was hurt not at all his self, the plaintiff is now severely scarred on his lip, in his mouth chin and head, whereby the concussion he received interferes with his memory, focus, and concentration, the plaintiff has a bulging knot on his left side rib cage where his ribs were probably broken and did not heal properly, and any cause of action about this assault is now completely lost.

63. Defendant Swift responded to this in her Step I response to Grievance Identifier: URF-09-12-3786-19D, which the plaintiff received on or about January 4, 2010, by stating only that "There is no evidence found to substantiate the plaintiff's allegation that defendant Osborn destroyed any of the plaintiff's property... The plaintiff will receive a hearing for excess legal property. This complaint is without merit and the grievance is denied." (See the plaintiff's grievance, Grievance Identifier: URF-09-12-3786-19D, dated 12/15/09 attached as Exhibit H).

64. Later that day on December 21, 2009 at about 3:04 P.M., the plaintiff received the T.V. box full of his legal property back from ARUS Howell of Neebish Unit and attached to the T.V. box containing the plaintiff seized on November 16, 2009 legal property was a copy of the MDOC Contraband Removal Record dated 11/16/09 at 08:30 that stated, "Per Dan Durant (defendant Durant) Call him if you have questions." (See the plaintiff's copy of this MDOC Contraband Removal Record dated 11/16/09 attached as Exhibit I).

65. Prior to this on December 15, 2009 at 8:40 P.M., a corrections officer named McCollum called the plaintiff over to the hearing investigator office to give the plaintiff back his seized legal property, stating that the thirty (30) day period for conducting the hearing had expired although it was actually the twenty-ninth (29th) day since defendant Osborn seized such on November 16, 2009.

66. Corrections officer McCollum then left the plaintiff's presence, came back and told the plaintiff that he thought the plaintiff's legal property was here

but it is not, that he will have to find it and get back with the plaintiff tomorrow.

67. On December 17, 2009, the plaintiff went to ARUS Howell to talk to him about his legal property and saw the box of his legal property sitting in ARUS Howell's office, but was not given it because ARUS Howell said the last thing he was told was to do was hold on to it and that he would have to find out what is going on before he can give it back to the plaintiff, after getting off the telephone from calling and trying to find defendant Durant and then officer McCollum to find out what they wanted him to do.

68. Later, as stated, the plaintiff was given his legal property back on December 21, 2009 at about 3:04 P.M. by ARUS Howell. (See Exhibit I).

69. On December 30, 2009, the plaintiff filed Grievance Identifier: URF-10-01-0001-28A about his legal property being taken by defendant Osborn on November 16, 2009, how it was just given back on December 21, 2009, thirty-five (35) days later, what happened in between and no hearing being held within 30 days of the date his legal property was taken. (See plaintiff's grievance, Grievance Identifier: URF-10-01-0001-28A, dated 12/30/09 attached as Exhibit J).

70. Defendant McLean rejected Grievance Identifier: URF-10-01-0001-28A stating, "The issue the plaintiff specify is a duplicate of the grievance listed at the end of this paragraph that has already been processed," that "This issue has been addressed in URF-12-3786-19D (Exhibit H), URF-09-11-3562-27A (Exhibit F) and URF-09-11-3480-19D (Exhibit G)." (See Exhibit J).

71. Despite what the plaintiff pointed out in his Step II and III appeals to defendant McClean's rejection of Grievance Identifier: URF-10-01-0001-28A, on May 6, 2010 defendant Russell approved defendant McLean's rejection stating, "The responses the plaintiff received at Steps I and II reflect that his issues were in fact considered and appropriately rejected at the facility level." (See

Exhibit J).

72. On information and belief, when a prisoner files a grievance, the grievance staff calls the matter to the attention of those individuals responsible for the matter that the grievance concerns.

## Claims for Relief

73. The actions of defendant Osborn in summarily seizing the plaintiff's legal property and initiating the MDOC excess legal property formal administrative hearing procedure against the plaintiff when defendant Osborn knew that no emergency, exigent, or extraordinary circumstance(s) exist to justify the ex parte, pre-notice seizure of the plaintiff's legal property besides fabricating that the plaintiff had excess legal property, and/or where defendant Osborn acted with reckless disregard of the actual circumstances, denied the plaintiff pro-cedural due process of the law in violation of the Fourteenth Amendment to the United States Constitution and Article 1, Section 17 of the Michigan Constitution 1963.

74. The actions of defendant Osborn in summarily seizing the plaintiff's legal property and initiating the MDOC excess legal formal administrative hearing procedure against the plaintiff when defendant Osborn knew that no emergency, exigent, or extraordinary circumstance(s) exist to justify the ex parte, pre-notice seizure of the plaintiff's legal property besides fabricating that the plaintiff had excess legal property, and/or where defendant Osborn acted with reckless disregard of the actual circumstances, were conscience-shocking, oppressive, malicious and arbitrary and denied the plaintiff substantive due process of the law in violation of the Fourteenth Amendment to the United States Constitution and Article 1, Section 17 of the Michigan Constitution 1963.

75. The actions of defendant Osborn in summarily seizing the plaintiff's legal property containing a 42 U.S.C. Section 1983 civil rights complaint and related

-3t-

paperwork that the plaintiff was preparing to file in federal district court, and initiating the MDOC excess legal property formal administrative hearing procedure against the plaintiff when defendant Osborn knew that no emergency, exigent, or extraordinary circumstance(s) exist to justify the exparte, pre-notice seizure of the plaintiff's legal property besides fabricating that the plaintiff had excess legal property, and/or where defendant Osborn acted with reckless disregard of the actual circumstances, were adverse actions that constituted retaliatory conduct, or retaliation for the plaintiff attempting to file a non-frivolous lawsuit to access the courts in violation of the First Amendment to the United States Constitution and Article 1, Section 3 of the Michigan Constitution 1963.

76. The actions of defendant Osborn in summarily seizing the plaintiff's legal property containing a 42 U.S.C. Section 1983 civil rights complaint and related paperwork that the plaintiff was preparing to file in federal district court, which the plaintiff later found to be missing, unaccounted for and not in any of the personal and legal property returned to the plaintiff, and initiating the MDOC excess legal property formal administrative hearing procedure against the plaintiff when defendant Osborn knew that no emergency, exigent, or extra-ordinary circumstance(s) exist to justify the ex parte, pre-notice seizure of the plaintiff's legal property besides fabricating that the plaintiff had excess property, and/or where defendant Osborn acted with reckless disregard of the actual circumstances, were actions that caused the plaintiff the loss of an opportunity to sue and denied the plaintiff access to the courts in violation of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article 1, Sections 2, 3 and 17 of the Michigan Constitution 1963.

-3u-

77. The actions and failure of conduct of defendant Osborn in summarily seizing the plaintiff's legal property, which contained a 42 U.S.C. Section 1983 civil rights complaint and related paperwork that the plaintiff was preparing to file in federal district court, and initiating the MDOC excess legal property formal administrative hearing procedure by fabricating that the plaintiff had excess legal property to justify the ex parte, pre-notice seizure of the plaintiff's legal property; of defendant Durant in appearing on November 18, 2009 to tell the plaintiff that he was the hearing investigator assigned to the plaintiff's excess legal property hearing, not asking the plaintiff if any of the plaintiff's seized legal property was needed to meet filing deadlines, not instructing the plaintiff to identify by a list the specific materials from the seized legal property that the plaintiff needed to make his deadline, having the plaintiff sort through his legal property to take out everything that was not legal in nature, telling the plaintiff that all of the legal property that defendant Osborn seized is that which would not fit in the plaintiff's duffel bag when you include the space for the plaintiff's personal T.V. to fit inside the duffel bag also, telling the plaintiff that he did not need the list of materials needed to make the plaintiff's deadline that the plaintiff had and made on his own accord because he would be the one conducting the hearing due to the plaintiff's deadline being so close, not conducting the hearing that he claimed on November 18, 2009 probably would be conducted today, returning on November 19, 2009 to give the plaintiff a 24 Hour Notice of hearing to be conducted for his excessive legal property hearing, telling the plaintiff that since he was only assigned to the plaintiff's excess legal property hearing the plaintiff would have to get with the segre-gation unit personnel to get access to his other property to see if the plain-tiff's 42 U.S.C. Section 1983 civil rights complaint and related paperwork was there since such was not in the plaintiff's seized by defendant Osborn legal

-3v-

property that the plaintiff sorted through on November 18, 2009, not supplying
the plaintiff with a statement from the URF-East property room officer, Ms. Helne,
on how packed in what did the plaintiff's property arrive from URF-West to URF-
East, along with a copy of the property receipt Ms. Helne completed as a Ride-
in on November 5, 2009, that the plaintiff requested assistance in getting to
present at his hearing, telling the plaintiff on November 19, 2009 that the
hearing will probably now be held on Tuesday, November 24, 2009, and when November
24, 2009 came and again no hearing was held, not coming back, being seen, or
communicating with the plaintiff ever again to advise the plaintiff of when the
hearing on the plaintiff's excess legal property would eventually be held; of
defendant Stapleton in not timely or otherwise scheduling and holding the hearings
required to be conducted pursuant to the MDOC excess legal property formal ad-
ministrative hearing procedure after directly or indirectly receiving the Notice
of Intent dated 11/16/09, where the State of Michigan, through the MDOC, has
the concomitant duty to see that the summary, ex parte, pre-notice seizure of
the plaintiff's legal property by defendant Osborn did not occur without ade-
quate procedural protections upon choosing to delegate to defendant Osborn the
broad power to effect that type of deprivation, and in not correcting and dis-
ciplining any misuse of the MDOC excess legal property formal administrative
hearing procedure that was found to exist when, as the ultimate person in position
to take notice of any misuse in the MDOC excess legal property formal admin-
istrative hearing process and ensure that the proper procedure is followed,
learning through the plaintiff's grievances, Grievance Identifiers: URF-09-11-
3562-27A (Exhibit F), URF-09-12-3786-19D (Exhibit H), and URF-10-01-0001-28A
(Exhibit J), and/or audit of prisoner hearings conducted pursuant to the MDOC
excess legal property formal administrative procedure, that the hearings required
to be commenced and completed in seven (7) days and thirty (30) days respectively

-3w-

in the plaintiff's case were not conducted, and of the possible reason(s) why they were not so conducted; of defendant McLean in rejecting Grievance Identifier: URF-09-11-3562-27A dated 11/25/09 (Exhibit F), preventing the plaintiff's grievance from being processed and addressed in writing on the merits, by stating that the issues raised in this grievance, (that the legal materials the plaintiff listed he needed to meet his November 26, 2009 deadline were not returned to him due to no hearing officer holding a hearing within the seven (7) days of defendant Durant's receipt of the plaintiff's list on November 18, 2009 and that being placed in segregation and defendant Osborn seizing the plaintiff's legal property on November 16, 2009 should not have stopped the plaintiff from being able to file his 42 U.S.C. Section 1983 civil rights complaint that the plaintiff was working on and preparing to file in court before being put in punitive seg-regation), are non-grievable per policy, per PD 03.02.130, because these issues are decisions made in hearings conducted by hearing officers of the State Office of Administrative Hearings and Rules, including property dispositions, and are issues that are directly related to the hearing process (e.g., ... timelines of hearing), and the plaintiff's avenue of recourse is through the rehearing process, when no decision was made in a hearing conducted by a hearing officer, and in rejecting Grievance Identifier: URF-10-01-0001-28A dated 12/30/09 (Exhibit J), preventing this plaintiff's grievance from being processed and addressed in writing on the merits, by stating that the issue the plaintiff specify, (that finally giving back the plaintiff's legal property on 12/21/09 thirty-five (35) days later after it was taken by defendant Osborn on 11/16/09 without holding a hearing, and after the plaintiff told ARUS Deery and defendant Durant that he needed some of his seized material to meet a 42 U.S.C. Section 1983 statute of limitations deadline, because the thirty (30) day period for conducting the plaintiff's excess legal property hearing had expired, which all occurred because

-3x-

defendant Osborn's spurious conduct and suspicious behavior, when ARUS T. Hagelee stated in Grievance Identifier: URF-09-11-3480-19D (Exhibit G) that the plaintiff's legal property was able to fit in his property on 11/4/09 in accordance with PD 04.07.112 but two weeks later on 11/16/09 defendant Osborn claims that the plaintiff's legal property does not fit in allowable limit, so that maybe you (the Step 1 respondent) can explain why this worked two different ways), is a duplicate of the grievance listed at the end of this paragraph that has been already processed, in that this issue has been addressed in URF-09-12-3786-19D (Exhibit H), URF-09-11-3562-27A (Exhibit F), and URF-09-11-3480-19D (Exhibit G), when it clearly was not; and of defendant Swift in responding to the plaintiff's Grievance Identifier: URF-09-12-3786-19D dated 12/15/09, when the plaintiff was interviewed and showed defendant Swift the Step 1 response to Grievance Identifier: URF-09-11-3480-27A from ARUS T. Hagelee (Exhibit G) which stated that although the plaintiff did have an excess of legal paperwork, all of it was able to fit in the plaintiff's property in accordance with PD 04.07.112 on November 4, 2009, told defendant Swift that all of his property transferred from URF-West to URF-East as such, that defendant Osborn lied when he said that the plaintiff had excess legal property that did not fit in accordance with PD 04.07.112 and summarily seized the plaintiff's legal property on November 16, 2009, that defendant Osborn did so and implemented the MDOC excess legal property formal administrative hearing procedure to confiscate and destroy the plaintiff's 42 U.S.C. Section 1983 civil rights complaint and related paperwork that defendant Osborn saw that the plaintiff was working on and preparing to file in court against the MDOC and now is no longer in the plaintiff's property anywhere, that it has been thirty-five (35) days today since defendant Osborn summarily seized the plaintiff's legal property on November 16, 2009, and that they are not holding the required hearings on the plaintiff's excess legal property because they do

-3y-

not want the plaintiff to develop the facts and put on record his case against defendant Osborn in order to prevent the plaintiff from having a 42 U.S.C. Section 1983 action against defendant Osborn and other prison officials, stated in response thereto at Step 1 that there is no evidence found to substantiate the plaintiff's allegation that defendant Osborn destroyed any of the plaintiff's property and that "the plaintiff will receive a hearing for excess legal property", of which response does not directly correspond or relate to any of what the plaintiff complained of in the written body of the grievance, and later on that same day of November 21, 2009, the plaintiff received back his seized as excess legal property without a hearing for excess legal property being conducted, establish that defendants Durant, Stapleton, McLean, and Swift conspired with defendant Osborn to take adverse action and retaliate against the plaintiff because the plaintiff was working on and preparing to file a non-frivolous lawsuit against MDOC prison officers and officials, to confiscate and destroy this non-frivilous lawsuit and to thereafter deprive the plaintiff of his due process right to hearings required to be conducted after the summary, ex parte, pre-notice seizure of his legal property by defendant Osborn as excess legal property, in order to cover-up the true facts surrounding the seizure of the plaintiff's legal property and prevent the plaintiff from having any opportunity to demonstrate how and why defendant Osborn lied and merely stated that the plaintiff had excess legal property to further other policies and denied the plaintiff of his substantive right of access to the courts in violation of the Article IV Privilege and Immunities Clause, the First Amendment Petition Clause and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article 1, Sections 2, 3, and 17 of the Michigan Constitution 1963, and constituted the tort of conspiracy under the law of Michigan.

78. The failure of defendant Stapleton in not timely or otherwise scheduling and holding the hearings that were required to be conducted pursuant to the MDOC excess legal property formal administrative hearing procedure upon directly or indirectly receiving the Notice of Intent dated 11/16/09 and in not correcting and disciplining any misuse of the MDOC excess legal property formal administrative hearing procedure that was found to exist when he learned through the plaintiff's grievances, Grievance Identifiers: URF-09-11-3562-27A (Exhibit F), URF-09-12-3786-19D (Exhibit H), and URF-10-01-0001-28A (Exhibit J), and/or audit of prisoner hearings conducted pursuant to the MDOC excess legal property formal administrative hearing procedure, that the hearings required to be commenced and completed in seven (7) days and thirty (30) days respectively in the plaintiff's case were not conducted and of the possible reason(s) why they were not so conducted, and the actions of defendant Russell, acting by policy on behalf of defendant Heyns, in affirming, approving and/or condoning the unconstitutional decisions of defendant McLean appealed to him by the plaintiff and of the failure to correct and discipline any misuse of the MDOC grievance procedure that was from why the plaintiff's issues of why the hearings required to be commenced and completed in seven (7) and thirty (30) days respectively in the plaintiff's case were not conducted and the reason(s) why they were not so conducted were not being officially processed and heard, by stating in Grievance Identifiers: URF-09-11-3562-27A (Ehibit F) and URF-10-01-0001-28A (Exhibit J) that the responces that the plaintiff received at Steps I and II reflect that the plaintiff's issues were in fact considered and appropriately investigated, and appropriately rejected, at the facility level, establish that the State of Michigan, through the MDOC, have a custom of inaction by which the plaintiff's procedural and substantive due process rights were denied in violation of the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article 1,

-3aa-

Section 17 of the Michigan Constitution 1963.

79. Defendants Osborn, Durant, Stapleton, McLean, Swift, Russell and Heyns', and/or the State of Michigan, through the MDOC, application of the MDOC excess legal property formal administrative hearing procedure to the plaintiff by seizing the plaintiff's legal property as excess legal property by summary, ex parte, pre-notice seizure prior to hearing based on emergency, exigent, or extraordinary circumstances justifying such type seizure, and then just returning back to the plaintiff his seized as such way legal property in thirty-five (35) days after the seizure without conducting any hearings that were required by the MDOC excess legal property formal administrative hearing procedure to be conducted, has no reasonable relation to a legitimate state purpose and is unreasonable, irrational, plainly arbitrary and capricious in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article 1, Sections 2 and 17 of the Michigan Constitution 1963.

V.    **Relief**

State briefly and precisely what you want the court to do for you.

WHEREFORE, plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

   1. The initial summary seizure of the plaintiff's legal property and imple-
   mentation against the plaintiff of the MDOC excess legal property formal
   administrative hearing procedure by defendant Osborn fabricating    that... the
   plaintiff had excess legal property violated the plaintiff's procedural
   and substantive due process rights under the Due Process Clauses of the
   Fourteenth Amendment to the United States Constitution and Article 1,
   (continue on next page)

November 21, 2012                                    _Troby D. Benson_
        Date                                        Signature of Plaintiff

**NOTICE TO PLAINTIFF(S)**

The failure of a *pro se* litigant to keep the court apprised of an address change may be considered cause for dismissal.

(Last Revised: February 2009)

Section 17 of the Michigan Constitution 1963.

2. The initial summary seizure of the plaintiff's legal property containing a 42 U.S.C. Section 1983 civil rights complaint and related paperwork that the plaintiff was preparing to file in federal district court and implementation against the plaintiff of the MDOC excess legal property formal administrative hearing procedure by defendant Osborn fabricating that the plaintiff had excess legal property violated the plaintiff's rights under the First Amendment to the United States Constitution and Article 1, Section 3 of the Michigan Constitution 1963.

3. The initial summary seizure of the plaintiff's legal property containing a 42 U.S.C. Section 1983 civil rights complaint and related paperwork that the plaintiff was preparing to file in federal court, which the plaintiff later found to be missing, unaccounted for and not in any of the plaintiff's property that was returned to him, and implementation against the plaintiff of the MDOC excess legal property formal administrative hearing procedure by defendant Osborn fabricating that the plaintiff had excess legal property violated the plaintiff's rights under the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article 1, Section 2, 3 and 17 of the Michigan Constitution.

4. Defendants Osborn, Durant, Stapleton, McLean and Swift's actions and failure of conduct detailed in paragraph 77 hereinabove constituting a conspiracy violated the plaintiff's rights under the Article IV Privilege and Immunities Clause, the First Amendment Petition Clause and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article 1, Sections 2, 3 and 17 of the Michigan Constitution 1963 and constitute a conspiracy under state law.

-5-

5. Defendant Stapleton's failure to timely or otherwise schedule and hold the hearings required to be conducted in the plaintiff's case and in not correcting and disciplining any misuse found to exist by defendants Osborn and Durant when the hearings required to be conducted in the plaintiff's case were not, and of the reason(s) why they were not conducted, and defendant Russell's, on behalf of defendant Heyns, actions in affirming, approving and/or condoning defendant McLean's unconstitutional decisions made in misuse of the MDOC grievance procedure designed to keep the plaintiff's issues of why the hearings required to be conducted in his case were not and why from being officially processed and heard, violated the plaintiff's procedural and substantive due process rights through a custom of inaction under the Due Process Clauses of the Fourteenth Amendment and Article 1, Section 17 of the Michigan Constitution 1963.

6. Defendants Osborn, Durant, Stapleton, McLean, Swift, Russell and Heyns' and/or the State of Michigan, through the MDOC, application of the MDOC excess legal property formal administrative hearing procedure to the plaintiff where the plaintiff's legal property was summarily seized by ex parte, pre-notice seizure and simply returned to him thirty-five (35) days later with no required hearings being held following seizure, violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article 1, Sections 2 and 17 of the Michigan Constitution 1963.

B. Award compensating damages in the following amounts:

1. $975,000.00 against defendant Osborn for the adverse actions and punishment taken against the plaintiff, including deprivation of the plaintiff's cause of action, access to the courts and amenity, economic and mental or emotional injuries sustained as a result of, and resulting from, his denial of due process in connection with the summary, ex parte, pre-notice seizure of the plaintiff's legal property as fabricated excess legal property.

-6-

2. $750,000.00 against defendant Durant for the adverse actions and punishment taken against the plaintiff, including deprivation of the plaintiff's cause of action, access to the courts, amenity and economic and mental or emotional injuries resulting from his denial of due process in connection with the plaintiff's excess legal property hearing process.

3. $500,000.00 against defendant Stapleton for the adverse actions, inaction and punishment taken against the plaintiff, including deprivation of the plaintiff's cause of action, access to the courts, amenity and economic and mental or emotional injuries resulting from his denial of due process in connection with the plaintiff's excess legal property hearing process.

4. $500,000.00 jointly and severally against defendants Stapleton, Russell and Heyns', or the State of Michigan, through the MDOC, for the custom of inaction whereby the adverse actions and punishment, including deprivation of the plaintiff's cause of action, access to the courts, amenity, and economic and mental or emotional injuries resulted from the denial of due process in connection with the plaintiff's excess legal property hearing and grievances processes.

6. $500,000.00 jointly and severally against defendants Osborn, Durant, Stapleton, McLean, Swift, Russell and Heyns, or the State of Michigan, through the MDOC, for summarily seizing the plaintiff's legal property by ex parte, pre-notice seizure as excess legal property and then simply returning such after thirty-five (35) days without conducting any required hearings following such type seizure.

C. Award punitive damages in the following amounts:

1. $750,000.00 against defendant Osborn.

2. $500,000.00 against defendant Durant.

3. $500,000.00 against defendant Stapleton.

4. $250,000.00 each against defendants Osborn, Durant, Stapleton, McLean and Swift.

-7-

5. $500,000.00 each against defendants Stapleton, Russell, Heyns, and/or the State of Michigan through the MDOC.

D. Grant such other relief as it may appear the plaintiff is entitled.

November 21, 2012

*Troby D. Benson*

Troby D. Benson 152327
Plaintiff, Pro se
Ojibway Correctional Facility
N-5705 Ojibway Road
Marenisco, MI 49947

-8-