UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

TROBY BENSON,

                Plaintiff,                      Case No. 2:12-cv-447

v.                                               Honorable Gordon J. Quist

BYRON OSBORN, et al.,

                Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants McLean, Swift, Stapleton, Russell, and Heyns. The Court will serve the complaint against Defendants Osborn and Durant.

**Discussion**

        I.        Factual allegations

Plaintiff Troby Benson, a state prisoner currently confined at the Ojibway Correctional Facility (OCF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Byron Osborn, Hearing Investigator Dan Durant, Step I Grievance

Coordinator Mike McLean, Resident Unit Manager Terri Swift, Hearings Administrator Richard B. Stapleton, Manager Grievance Section Richard D. Russell, and MDOC Director Daniel H. Heyns.

In Plaintiff's complaint, he alleges that on November 4, 2009, he was transferred from one general population unit in the Chippewa Correctional Facility (URF) to another unit, after being charged with fighting. On November 5, 2009, Plaintiff was summoned to the property room to receive his property, which had been packed by prison staff. Plaintiff states that prison staff failed to inventory his property and list it on a personal property receipt when they packed it. Nor did staff use property seals on his state-issue duffel bag and personal footlocker. When the property arrived at Plaintiff's new unit, Property Room Officer Helne unpacked and itemized the property on a receipt entitled "ride-in." In addition, Plaintiff discovered that his food and hygiene items were all missing and that his t.v. had been damaged, as had a considerable amount of Plaintiff's legal property, including a civil rights complaint that Plaintiff had been working on regarding an assault he had received in November of 2006 at the hands of his roommate.

On November 16, 2009, following a hearing, Plaintiff was sentenced to segregation. Plaintiff wrote to the Assistant Resident Unit Supervisor of the segregation unit informing him that he had a deadline of November 26, 2009, to file a civil rights action and requesting access to his legal property so that he could finish it and send it to Federal Court in a timely manner. Plaintiff also filed a grievance regarding this issue. In response to the grievance, Assistant Resident Unit Supervisor Hagelee stated that after Plaintiff was involved in a fight on November 4, 2009, he was handcuffed and taken to the control center. An officer was immediately sent to secure Plaintiff's property and found that Plaintiff's television was missing from his area of control. The television was found on the floor in the corner of one of the bathrooms and Plaintiff's legal work was found in a "shambles." Mr. Hagelee further stated:

> It appears that [Plaintiff] failed to safeguard his property prior to being involved in a fight in the Delta Unit bathroom on 11/4/09. His TV was stolen by unknown prisoners and discarded on the floor of the 2 side bathroom before staff could secure it and whatever store goods he did not receive were also stolen from his cube. Staff packed his property in accordance with 04.07.112, the damage to his TV was done from being stolen and tossed on the tiled unit bathroom floor, not from being improperly packed up. Staff did have to pack his legal paperwork tightly to make it fit but felt it was important that we try and get him all his legal paperwork if possible.
>
> In conclusion staff attempted to secure [Plaintiff's] property as quickly as possible after the fight to pack it up. Per PD 04.07.112 the Department will not assume responsibility for lost, damaged, or stolen property. Unknown prisoner's [sic] removed items from [Plaintiff's] area of control before staff could secure it. The officers involved in the packup have been reminded of the need to properly inventory the property before the prisoner is transferred to the East or West side now that we are a combined facility.

(Docket #1-2, p. 21 of 35.)

On November 17, 2009, Plaintiff was served with a notice of intent to conduct an administrative hearing, which asserted that Plaintiff was in possession of excess legal property that would not fit into his duffel or footlocker. The property receipt completed by Defendant Osborn indicated that one box full of excess legal work had been seized as excess property / contraband. Plaintiff claims that he did not receive copies of the property receipt or of the contraband removal record until he was released from segregation on December 6, 2009, in violation of MDOC policy.

On November 18, 2009, Plaintiff told Defendant Durant that he needed access to his legal work so that he could file a civil rights complaint before the statute of limitations ran out on November 26, 2009. Defendant Durant told Plaintiff that he wanted him to go through his legal work and take out everything that did not relate to pending litigation. Defendant Durant indicated that an officer would take him to his property in a few minutes. Plaintiff was subsequently taken to a holding cell where he found his legal property tightly packed in a television box. Plaintiff went

through his property, but was unable to find his civil rights complaint. Plaintiff told Defendant Durant that the complaint must be in his other legal property, which had been packed up by Defendant Osborn. Defendant Durant told Plaintiff that in order to obtain access to that property, he would have to get permission from the segregation unit personnel. Plaintiff gave Defendant Durant a list of the materials he needed to make his court deadline, as well as a request for a statement from property room officer Helne regarding the manner in which Plaintiff's property had arrived on the unit. Plaintiff asked when the hearing on his property would be held and Defendant Durant told him November 24, 2009.

On November 25, 2009, Plaintiff filed a grievance complaining about his inability to access his civil rights complaint in a timely manner. This grievance was rejected by Defendant McLean as non-grievable because it related to the timeliness of Plaintiff's hearing on the notice of intent. On December 6, 2009, Plaintiff was released from punitive segregation and his property was returned to him. Upon unpacking his property, Plaintiff discovered that his civil rights action was missing, as was his application to proceed *in forma pauperis*. Plaintiff filed a grievance on this issue, asserting that Defendant Osborn must have destroyed his legal property. On January 4, 2010, Defendant Swift responded by stating that there was no evidence to substantiate Plaintiff's claims. Plaintiff's step II and III appeals were denied by Defendants Russell and McLean.

In the response to the step I grievance, Defendant Swift summarized Plaintiff's complaint as follows:

> [Plaintiff] complains that on 11/16/09 his property was packed by [Resident Unit Officer] Osborn. Upon release from detention 20 days later he discovered that his copy of the Pack-up slip was still stapled to the duffle bag along with a contraband removal slip for excess legal work, and numerous items were not listed and or were missing. He alleges that [Resident Unit Officer] Osborn disposed of the missing items without authorization.

(Docket #1-2, p. 25 of 35.)

> Defendant Swift summarized the investigation information as follows:
>
> [Plaintiff] was interviewed 12/21/09 at 1335 hours. When asked what evidence he had that suggested that the [Resident Unit Officer] destroyed any of his property he replied that one of his razors in the bag had been broken and that [Resident Unit Officer] Osborn is known for doing this. Again he was asked what form of proof he had to base this allegation on. He replied that he had none. He was then asked where his bunkie was following the incident that sent [Plaintiff] to segregation, and could his bunkie have taken some of the alleged missing property. He admitted that it could have been his bunkie but still feels it was the officer.
>
> [Resident Unit Officer] Osborn was interviewed and states that he packed all of the property that was in the prisoner's area of control, and also did a Notice of Intent to Conduct an Administrative Hearing for excess legal property. He attached the prisoner's copy of the forms to the duffle bag and forwarded the property to segregation.

(Docket #1-2, p. 25 of 35.)

> Defendant Swift summarized the applicable policy, 04.07.112 (B), which states:
>
> Employees shall take reasonable precautions to protect the property of prisoners; however, responsibility for safeguarding property rests with the prisoner. Prisoners shall store property in their cell or room in accordance with institutional procedures. The Department will not assume responsibility for lost, stolen, or damaged property. If the prisoner incurs a loss through no fault of his/her own, s/he may petition the institution's Prisoner Benefit Fund (PBF), as provided in PD 04.02.110 "Prisoner Benefit Fund", or request reimbursement through the State Administrative Board, in accordance with OP 03.02.130-A "State Administrative Board Prisoner Property Reimbursement".

Defendant Swift further noted that in order to receive reimbursement for a loss of property, a prisoner must show that he did not contribute to the loss, that the loss was caused by staff, that the prisoner owned the property, and that the property was in the sole control of the MDOC when lost or damaged. As noted above, Defendant Swift concluded that Plaintiff could not meet this burden. (Docket #1-2, p. 25 of 35.)

Plaintiff claims that Defendants' conduct violated his rights under the First and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory relief.

  II.  <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Defendants McLean, Swift, Stapleton, Russell, and Heyns were not involved in Plaintiff's loss of legal property and that their only roles in this action involve the denial of administrative grievances or the failure to act. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some

other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

    Plaintiff has not alleged facts establishing that Defendants McLean, Swift, Stapleton, Russell, and Heyns were personally involved in the activity which forms the basis of his claim. The only roles that Defendants McLean, Swift, Stapleton, Russell, and Heyns had in this action involve the denial of administrative grievances or the failure to act. Defendants McLean, Swift, Stapleton, Russell, and Heyns cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Accordingly, the Court concludes that Plaintiff's claims against Defendants McLean, Swift, Stapleton, Russell, and Heyns are properly dismissed for lack of personal involvement.

    Throughout Plaintiff's complaint, he alleges that he did not receive procedural protections provided by MDOC policy regarding the packing of his property and the decision that

he had excess legal property. No due process interest can be derived from a statute or regulation that merely establishes procedural requirements. *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Bills v. Henderson*, 631 F.2d 1287, 1297-99 (6th Cir. 1980). In addition, the procedural due process mandated by the Constitution cannot be altered by or defined by, and therefore is not necessarily the same as, the procedures required by state law. *See Vitek v. Jones*, 445 U.S. 480, 490-91 (1980). Thus, so long as the Plaintiff received that process which was due under the Constitution, the fact that the State may have failed to comply with its own procedure does not state a cause of action under 42 U.S.C. § 1983. *Id.*; *see also Walker v. Mintzes*, 771 F.2d 920, 933-934 (6th Cir. 1985).

Furthermore, Plaintiff's complaint, as well as the attached documents, establish that Plaintiff received due process of law. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). In this case, Plaintiff claims that his hearing on the notice of intent that he had excess legal property was not held in a timely manner. However,

Plaintiff does not allege that he was denied a hearing altogether, or that he was unable to present evidence during the hearing. In addition, in his attempt to seek redress for the loss of his property, Plaintiff was able to present evidence and present his claim. The fact that Plaintiff was unsuccessful does not mean that he did not receive due process. Therefore, this claim is properly dismissed.

Moreover, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized negligent acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Jul. 9, 2012). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy

Directive, 04.07.112, ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Plaintiff makes a conclusory assertion that Defendants' conduct was motivated by a desire to retaliate against him. However, Plaintiff fails to allege any specific facts in support of this claim. Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). Because Plaintiff's retaliation claims are entirely conclusory, they are properly dismissed.

Plaintiff further claims that Defendants' conduct violated his equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). In this case, Plaintiff fails to allege that he was treated differently than other similarly situated persons. Therefore, his equal protection claims are properly dismissed.

Finally, Plaintiff claims that Defendants Osborn and Durant acted in a way that prevented him from filing his meritorious lawsuit in a timely manner. The court notes that Plaintiff's access to courts claims against Defendants Osborn and Durant are not clearly frivolous and may not be dismissed upon initial screening.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants McLean, Swift, Stapleton, Russell, and Heyns will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, Plaintiff's due process, equal protection and retaliation claims against Defendants Osborn and Durant are also dismissed. The Court will serve the complaint against Defendants Osborn and Durant with regard to Plaintiff's access to courts claims.

An Order consistent with this Opinion will be entered.


Dated: July 15, 2013          /s/ Gordon J. Quist
                              GORDON J. QUIST
                              UNITED STATES DISTRICT JUDGE