UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TROBY BENSON,

    Plaintiff,

v.                                                                    Case No. 2:12-cv-447
                                                                 HON. GORDON J. QUIST

BYRON OSBORN, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Troby Benson filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Defendants Mike McLean, Terri Swift, Richard Stapleton, Richard Russell, and Daniel Heyns have been dismissed from this action. Defendants Osborn and Durant have filed a motion for summary judgment (ECF No. 60).

Plaintiff alleges that in November of 2009, Defendants Osborn and Durant violated his right of access to the courts by confiscating his property, including legal materials that he needed to file a lawsuit, which asserted a failure to protect claim based upon his assault by his prison cell mate in November of 2006. Plaintiff's property was taken because he had excess property when he moved into administrative segregation. The facts of this case were summarized in the court's previous opinion:

> On November 17, 2009, Plaintiff was served with a notice of intent to conduct an administrative hearing, which asserted that Plaintiff was in possession of excess legal property that would not fit into his duffel or footlocker. The property receipt completed by Defendant Osborn indicated that one box full of excess legal work had been seized as excess property/contraband. Plaintiff claims that he did not receive copies of the property receipt or of the contraband removal

record until he was released from segregation on December 6, 2009, in violation of MDOC policy.

On November 18, 2009, Plaintiff told Defendant Durant that he needed access to his legal work so that he could file a civil rights complaint before the statute of limitations ran out on November 26, 2009. Defendant Durant told Plaintiff that he wanted him to go through his legal work and take out everything that did not relate to pending litigation. Defendant Durant indicated that an officer would take him to his property in a few minutes. Plaintiff was subsequently taken to a holding cell where he found his legal property tightly packed in a television box. Plaintiff went through his property, but was unable to find his civil rights complaint. Plaintiff told Defendant Durant that the complaint must be in his other legal property, which had been packed up by Defendant Osborn. Defendant Durant told Plaintiff that in order to obtain access to that property, he would have to get permission from the segregation unit personnel. Plaintiff gave Defendant Durant a list of the materials he needed to make his court deadline, as well as a request for a statement from property room officer Helne regarding the manner in which Plaintiff's property had arrived on the unit. Plaintiff asked when the hearing on his property would be held and Defendant Durant told him November 24, 2009.

Opinion (ECF No. 5 at 3-4).

Defendants argue that Plaintiff's access to courts was not denied because he cannot show an actual injury to his pursuit of a non-frivolous claim.[1] Defendants also argue that they are entitled to qualified immunity and Eleventh Amendment immunity. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

---

[1] Plaintiff alleges that Defendant Durant was aware of the statute of limitations deadline in the underlying case at the time the property was confiscated, and indicated his knowledge of that fact to Plaintiff. Plaintiff's deposition (ECF No. 61-2, Page ID 523 at dep. page 10). Defendant Durant submitted an affidavit indicating that Plaintiff did not tell him that Plaintiff was in danger of missing a filing deadline in a civil case. Defendant Durant's affidavit (ECF No. 61-3, Page ID 530). Defendant Osborn also submitted an affidavit indicating that Plaintiff did not tell him that Plaintiff was in danger of missing a filing deadline in a civil case. Defendant Osborn's affidavit (ECF No. 61-4, Page ID 533).

477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that

may impede the inmate's accessibility to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999). *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415

(2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Therefore, Plaintiff must show that the underlying civil rights cause of action was based upon an actionable claim that was not frivolous. Plaintiff alleges that in 2009, at the time his personal property was confiscated, he intended to file a civil rights complaint due to the fact that he was assaulted by his cell mate in November of 2006. Plaintiff alleges that he was knocked unconscious when he was assaulted in his cell. Plaintiff states that prior to the assault, he was unaware that his cell mate intended to assault him. Further, Plaintiff does not know if any officer witnessed the assault and failed to intervene. Plaintiff testified at a deposition:

> Q. So had you – before this November 2006 incident had you had problems with your roommate before that?
>
> A. No, that's what confused me. I knew he was - - he was a Nation of Islam guy. He come in - - when he first come in he come in on when they do the fasting, that religious fast they do. And, you know, we talked a few times, and he had a case in the Sixth Circuit and I helped him put that together and get off and whatever they did. I didn't try to do no legal work because it was already done. He just had to get something in at a certain time, and really to this date I don't know why he did it.
>
> Q. Did you ever warn - -
>
> A. Why he did it.
>
> Q. Did you ever tell any staff members, any – Officer LeBlanc or anyone else, that you were fearful of your bunkie that he might attack you or do something to harm you?
>
> A. No.
>
> Q. So it's safe to say the attack came out of the blue then?
>
> A. Pardon me?

>Q. The attack came out of the blue, something that you didn't expect or anticipate?
>
>A. Right.

Plaintiff's deposition transcript at 17-18, (ECF No 61-2, Page ID 524-525).

An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Brown v. Bargery*, 207 F.3d 863, 866 (2000); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). Claims that lack an arguable or rational basis in law include claims for which the defendants are clearly entitled to immunity and claims of infringement of a legal interest which clearly does not exist; claims that lack an arguable or rational basis in fact describe fantastic or delusional scenarios. *Neitzk*e, 490 U.S. at 327-28; *Lawler*, 898 F.2d at 1199.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that

the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Farmer*, 511 U.S. at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837. Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.*

In order to support an Eighth Amendment claim, plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect." *Id.* at 165. *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988). An error of judgment does not subject a prison official to liability. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the dismissal of a prisoner's complaint that prison officials failed to protect him. In that case, prison officials transferred plaintiff for a period of six months to another prison cell after plaintiff informed the officials that he feared for his safety. Plaintiff was then transferred back to his original cell. Plaintiff informed his counselor that he feared for his safety, because he heard rumors regarding a planned attack. Plaintiff was subsequently assaulted. The court found that defendants were not

deliberately indifferent to a known risk of harm to plaintiff, and upheld the district court's finding that the assault was a single, isolated incident. The district court judge indicated that a full hearing would be appropriate if no action had been taken to protect the plaintiff. Plaintiff, however, was transferred to another unit after his initial complaints. Following plaintiff's transfer back to the original unit, he then made only general allegations that someone was going to hit him on the head. The court concluded that defendants, at most, were guilty of mere negligence and dismissed the claim.

Plaintiff's underlying failure to protect claim had no chance for success. Plaintiff never informed any prison official that he was in danger of assault. In fact, Plaintiff has admitted that he had no idea that his cell mate wanted to assault him and, to this day, does not know why he was assaulted. Plaintiff has failed to put forth any allegations which could show that any prison official had knowledge that Plaintiff was at risk from an assault by his cell mate. At best, Plaintiff has made allegations of negligence by asserting that prison guards failed to make timely rounds and failed to perform their jobs correctly. However, Plaintiff has alleged no facts showing that any prison official acted with deliberate indifference towards his safety. Plaintiff's own admission supports the conclusion that his underlying cause of action would not have been successful even he had filed the action. For this reason, in the opinion of the undersigned, Plaintiff's denial of access to the courts claim should be dismissed.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir.

1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination, the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.[2]

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant Osborn and Durant's motion for summary judgment. Accordingly, it is recommended that Defendant Osborn and Durant's Rule 56A Motion for Summary Judgment (ECF No. 60) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C.

---

[2]To the extent that Plaintiff is suing the individual Defendants in their official capacities, such claims are barred by the Eleventh Amendment. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).

§ 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal. Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: December 4, 2015

   /s/ TIMOTHY P. GREELEY
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE